UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARY A. MAZIARZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-30098-MAP |
| | ) | |
| MEGAN BRENNAN, | ) | |
| Postmaster General of the | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
(Dkt. No. 15)

ROBERTSON, U.S.M.J.

    Plaintiff Mary A. Maziarz ("Plaintiff"), who is self-represented in this case, was an

employee of the United States Postal Service ("USPS" or "Defendant").  She alleges in her

complaint that she was discriminated against based on age and physical disability when the

USPS denied her a reasonable accommodation and continuation of pay for an on-the job injury,

and terminated her employment (Dkt. No. 1).

    Before the court is Defendant's Motion to Dismiss or for Summary Judgment

("Defendant's Motion") based on Plaintiff's alleged failure to exhaust her administrative

remedies (Dkt. No. 15), which was referred to the undersigned for a report and recommendation

(Dkt. No. 26).  *See* Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1)(B).  On April 18, 2016, the

court held a hearing on the motion (Dkt. No. 31).  At the conclusion of the hearing, because

matters arguably outside of the pleadings had been presented and not excluded by the court, the

court gave each of the parties the opportunity to make supplemental pertinent filings so that the

court could treat Defendant's Motion as one for summary judgment.  *See* Fed. R. Civ. P. 12(d).[1]

Plaintiff made supplemental filings on May 17 and June 28, 2016 (Dkt. Nos. 34 & 44);

Defendant made a supplemental filing on June 3, 2016 (Dkt. No. 36).  For the reasons stated

below, based on a review of Plaintiff's complaint and the parties' submissions, including the

supplemental submissions, the court recommends that Defendant's Motion be granted.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by the USPS as a regular or general expeditor (Dkt. No. 16-1 at 1;

Dkt. No. 25 at 2).  She alleges in her complaint that she was discriminated against on the basis of

age and physical disability when she was denied a reasonable accommodation on November 28

and December 6, 2012 for a "non-work related disability"; was denied continuation of pay from

December 12 through December 25, 2012 after suffering an on-the-job injury; and was issued a

December 26, 2012 Notice of Removal ("NOR") for failure to be regular in attendance and

failure to respond to official correspondence (Dkt. No. 1 at 1-2).

The NOR, a copy of which was attached as an exhibit to the memorandum in support of

Defendant's Motion, stated that it was an advance written notice that Plaintiff would be removed

from her employment with the USPS no sooner than 30 calendar days from her receipt of the

NOR for failure to be regular in attendance (a list of absences was noted) and failure to provide

acceptable medical documentation related to her absences (Dkt. No. 16-1 at 1-2).  The NOR

referenced pre-disciplinary interviews with Plaintiff on November 28 and December 6, 2012,

---

[1] Federal Rule of Civil Procedure 12(d) provides as follows:

> RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS.  If, on a motion under
> Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not
> excluded by the court, the motion must be treated as one for summary judgment
> under Rule 56.  All parties must be given a reasonable opportunity to present all
> the material that is pertinent to the motion.

during which Plaintiff failed to provide a plausible explanation for her continued absences; two prior suspensions, one in April 2012 and one in December 2011, and a March 23, 2011 letter of warning, all based on Plaintiff's failure to be regular in attendance; and one prior suspension in July 2011 for failure to perform her job duties in a safe and satisfactory manner (*id*. at 2-3).  The NOR, which was signed by Plaintiff's supervisor and a concurring official, notified Plaintiff that she had a right to file a grievance and request for arbitration within fourteen (14) days of her receipt of the notice (*id*. at 3).  Under the Collective Bargaining Agreement ("CBA") applicable to Plaintiff's position, an employee issued an NOR remained in pay status for thirty (30) days after issuance of the NOR.  The NOR was effective thirty (30) days after its issuance (Dkt. No. 16-3 at 1-2, ¶¶ 1-3).

Plaintiff received the NOR on December 27, 2012 (Dkt. No. 16-2).

Plaintiff filed a grievance over the NOR (Dkt. No. 16-3 at 2, ¶ 4).  The arbitration hearing was conducted on March 26, 2013 (Dkt. No. 32 at 2).  On April 15, 2013, the arbitrator rendered a written decision, ruling that Plaintiff's removal as an employee of the USPS was proper and denying her grievance (Dkt. No 25-1 at 37).

Plaintiff has submitted the following as evidence of the date of her removal as a USPS employee:

- A Notice of Removal stating that the removal action was upheld on 4/15/2013 with an effective date of 4/15/2013 (*id*. at 45);
- A Terminal Leave Worksheet stating that Plaintiff's date of separation was 4/15/2013 (*id*. at 46);
- An untitled personnel form stating that Plaintiff's last day in pay status was 01/24/2013 (*id*. at 47);
- A Notice of Change in Health Benefits Enrollment, stating that Plaintiff's separation was effective 4/15/2013 (*id*. at 48); and
- Correspondence dated April 4, 2014, signed by Vernon N. Tyler, Jr., stating that Plaintiff was a former USPS employee who was removed from employment effective April 15, 2013 (*id*. at 51-53).

It is undisputed that Plaintiff first initiated contact with an Equal Employment Opportunity ("EEO") counselor on June 7, 2013 (Dkt. No. 16-4; Dkt. No. 36-2 at 1, ¶ 4).  It is also undisputed that Plaintiff did not provide notice to the Equal Employment Opportunity Commission ("EEOC") of an intent to file a civil action alleging discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA") within 180 days of her separation from the USPS (*id*. at 2, ¶ 6).  Nor, so far as appears from the record, did she do so at any time during the administrative process, which concluded in February 2015 (*id*.).

II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(d), having provided notice to the parties and permitted each to make supplemental submissions of pertinent information, the court treats Defendant's Motion as one for summary judgment.  *See* Fed. R. Civ. P. 12(d).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). In the summary judgment context, "[a] factual dispute is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'"  *DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (citations and internal quotation marks omitted)).  "[A] fact is 'material' 'if its existence or nonexistence has the potential to change the outcome of the suit.'"  *Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 7 (1st Cir. 2015) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).

A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'"  *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325).  If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  In ruling on summary judgment, the court "view[s] 'the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'"  *Padilla-García v. Guillermo Rodríguez*, 212 F.3d 69, 73 (1st Cir. 2000) (quoting *Euromotion, Inc. v. BMW of N. Am., Inc.*, 136 F.3d 866, 869 (1st Cir. 1998)).

III.    ANALYSIS

A. Statutory framework

Plaintiff's complaint does not identify the statutory basis for the disability discrimination claims she has asserted.  It is well-settled, however, that the Americans with Disabilities Act does not cover federal employees, *see, e.g., Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 46 (1st Cir. 2014), and that Plaintiff's complaint should be construed as asserting claims brought pursuant to the Rehabilitation Act.  *See id.*  When a federal employee sues for disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794a, "'[t]he remedies, procedures, and rights set forth in [Title VII] of the Civil Rights Act of 1964 . . . shall be available' to any aggrieved employee or applicant for employment."  *Bartlett v. Dept. of the Treasury (I.R.S.)*, 749 F.3d 1, 6 (1st Cir. 2014) (quoting 29 U.S.C. § 794a(a)(1)) (alterations in original).  The procedures of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. §§ 2000e *et seq.*, which are incorporated by reference into the Rehabilitation Act, include a

requirement that, "[b]efore a federal civil servant can sue h[er] employer for [discrimination],

[s]he must, among other things, 'initiate contact' with an Equal Employment Opportunity

counselor at h[er] agency 'within 45 days of the date of the matter alleged to be discriminatory.'"

*Green v. Brennan*, 136 S.Ct. 1769, 1774 (2016) (quoting 29 C.F.R. § 1614.105(a)(1) (2015))

(USPS employee asserted race discrimination claim under Title VII).[2]

The ADEA "treats federal employees as a class apart from other employees." *Jorge v.

Rumsfeld*, 404 F.3d 556, 561 (1st Cir. 2005) (citing *Rossiter v. Potter*, 357 F.3d 26, 28-29 (1st

Cir. 2004)).

> That difference implicates the ADEA's enforcement mechanism: whereas most
> employees must first exhaust administrative remedies before instituting an ADEA
> action, *see* 29 U.S.C. § 626(d), a federal employee has the option of bypassing
> administrative remedies entirely and suing directly in the federal district court. *Id.*
> § 633a(c). A federal employee who wishes to avail himself of this bypass option
> must notify the EEOC of his intent to sue within 180 days following the

---

[2] In *Bartlett*, the First Circuit noted that 1978 revisions to the Rehabilitation Act created what the Fifth Circuit referred to as "an 'apparently incongruent enforcement scheme.'" *Bartlett*, 749 F.3d at 7 (quoting *Spence v. Straw*, 54 F.3d 196, 199 (3d Cir. 1995)). If a federal employee sues under § 791 (Section 501 of the Rehabilitation Act), Title VII's administrative procedures apply. If an employee sues for a violation of § 794 of the Rehabilitation Act, redress may be through the procedures set out in Title VI of the Civil Rights Act, which do not require exhaustion of administrative remedies. *Id.* The First Circuit noted in *Bartlett* that every circuit court that has addressed the issue directly has ruled that a federal employee bringing suit under the Rehabilitation Act must exhaust administrative remedies before proceeding to court. The First Circuit, while it has not directly addressed the issue, has suggested the same, and other sessions of this court have so ruled. *Id.* at 8. Plaintiff did not identify § 794 as the basis of her claim (indeed, she did not identify any statutory basis for her claim), and she has not argued that she is not subject to the exhaustion requirement. In *Bartlett*, as in this case, the government raised the plaintiff's failure to exhaust administrative remedies as a basis for dismissal, and the plaintiff "never asserted that she was exempt from the exhaustion requirement because it was inapplicable to the provision on which she was resting her claim." *Id.* at 9. In *Bartlett*, the court ruled that the plaintiff had thereby "forfeited any argument that exhaustion of remedies under the Rehabilitation Act was not required in [her] case." *Id.* (citing *Farris v. Shinseki*, 660 F.3d 557, 562 n.5 (1st Cir. 2011)). The court complies with recent First Circuit precedent in concluding that, in the circumstances of this case, Plaintiff has waived any argument that she was not required to exhaust her administrative remedies before bringing a disability discrimination claim under the Rehabilitation Act in this court. *See id.*; *see also Vazquez-Rivera*, 759 F.3d at 47 n.2 (same).

occurrence of the allegedly unlawful practice and then observe a thirty-day
waiting period before filing suit.  *Id.* § 633a(d).

*Jorge*, 404 F.3d at 561.  A federal employee suing for age discrimination who does not choose

the so-called bypass route must follow the same administrative process applicable to other

discrimination claims:  the employee must initiate contact with an EEO counselor within 45 days

of the allegedly discriminatory act, or, in the case of a personnel action, within 45 days of the

effective date of the personnel action.  *See* 29 C.F.R. § 1614.105(a)(2) (2015).[3]

"This exhaustion requirement is no small matter; it 'is a condition to the waiver of

sovereign immunity' and thus 'must be strictly construed.'"  *Vazquez-Rivera*, 759 F.3d at 47-48

(quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990)).  "[T]ypically a failure to

exhaust administrative remedies will bar suit in federal court[.]"  *Vera v. McHugh*, 622 F.3d 17,

29-30 (1st Cir. 2010).  Nonetheless, the exhaustion of administrative remedies is not a

jurisdictional prerequisite to a federal court suit.  *See Vera*, 622 F.3d at 30.  The time period for

initiating an administrative complaint is "subject to equitable doctrines such as tolling or

estoppel."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (citing *Zipes v.

Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).  Such doctrines are to be applied

sparingly, however, "and [the First Circuit] takes 'a narrow view of equitable exceptions to Title

VII exhaustion requirements.'"  *Vera*, 622 F.3d at 30 (quoting *Frederique-Alexandre v. Dep't of

Nat'l & Envtl. Res.*, 478 F.3d 433, 440 (1st Cir. 2007)).

B.  Exhaustion of administrative remedies

---

[3] 29 C.F.R. § 1614.105(a)(2), which is part of a regulatory scheme that applies to federal
employers, provides that "[a]n aggrieved person [alleging discrimination on the basis of race,
color, religion, sex, national origin, age, disability, or genetic information] must initiate contact
with a Counselor within 45 days of the matter alleged to be discriminatory or, in the case of
personnel action, within 45 days of the effective date of the action."

Plaintiff alleges that she was denied a reasonable accommodation on November 28 and December 6, 2012 and denied continuation of pay from December 12 through December 25, 2012. She received the NOR on December 27, 2012. Liberally construing Plaintiff's submissions, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (documents filed *pro se* must be liberally construed, and a *pro se* complaint held to standards less stringent than those governing pleadings drafted by lawyers), plaintiff contends that she timely initiated contact with an EEO counselor because the acts she alleges were discriminatory were (and are) continuing. In the alternative, she contests some facts asserted by affidavit on behalf of Defendant concerning notice to her of the EEO deadline and asserts that she is entitled to equitable tolling on this basis. These contentions, neither of which is well-founded, will be addressed in turn.

  1. Reasonable accommodation

*Green* provides that a claim accrues when an employee has a complete and present cause of action and that an applicable limitations period begins to run at that point. *See Green*, 136 S.Ct. at 1777. When a request for a reasonable accommodation is made, refusal of that request "'is a discrete discriminatory act triggering the statutory [or administrative] limitations period.'" *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009) (quoting *Ocean Spray Cranberries, Inc. v. MCAD*, 808 N.E.2d 257, 268 (Mass. 2004); citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114; *Rivera v. P.R. Aqueduct & Sewers Auth.*, 331 F.3d 183, 188 (1st Cir. 2003); *Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 134-35 (2d Cir. 2003)). The First Circuit held in *Tobin* that the continuing violation doctrine does not apply to a failure to accommodate claim. *See Tobin*, 553 F.3d at 130-31. Thus, Plaintiff was obligated to bring her failure to accommodate claims to the attention of an EEO counselor by, at the latest, January 20, 2013, which is 45 days after the December 10, 2012 denial of her second request for an

accommodation.  *See Green*, 136 S.Ct. at 1774.  It is undisputed that Plaintiff did not initiate

contact with an EEO counselor until June 7, 2013, far beyond this 45-day time limit (Dkt. No.

16-4).  Accordingly, Plaintiff's failure to accommodate claims are barred for failure timely to

exhaust her administrative remedies.  *See generally Cano v. U.S. Postal Serv.*, 755 F.2d 221 (1st

Cir. 1985) (per curiam) (affirming dismissal of suit for failure to exhaust administrative

remedies); *Pell v. Potter*, Civil Action No. 09-10894-DJC, 2011 WL 808829 (D. Mass. Mar. 1,

2011) (granting USPS motion to dismiss based on plaintiff's failure to exhaust administrative

remedies); *cf. Rodriguez v. Potter*, 419 F. Supp. 2d 58, 65 (D.P.R. 2006) (when plaintiff sought

to sue based on warning letters, claims accrued on dates letters were issued; claims based on

letters were barred because plaintiff failed timely to exhaust administrative remedies).

    2.  <u>Wrongful discharge</u>

    Based on the undisputed facts of record, there are two possible accrual dates for

Plaintiff's wrongful discharge claim.  Regardless of the date selected, however, Plaintiff's initial

contact with an EEO counselor was untimely.  The first possible accrual date for Plaintiff's

wrongful discharge claim is December 27, 2016, the date on which she received the NOR (Dkt.

No. 16-2).  The Supreme Court recently reiterated that "an ordinary wrongful-discharge claim

accrues – and the limitations period begins to run – when the employer notifies the employee

[s]he is fired, not on the last day of h[er] employment."  *Green*, 136 S.Ct. at 1782 (citing *Del.

State Coll. v. Ricks*, 449 U.S. 250, 258-59 (1980)).[4]  In *Ricks*, the Supreme Court held that the

plaintiff's claim accrued, and the limitations period for filing started running, when the college

gave the plaintiff notice that he had been denied tenure, not at the expiration of the final one-year

---

[4] *Green* addresses the accrual date of a wrongful discharge claim when an employee claims
constructive discharge, which is not an issue in this case.  *See Green*, 136 S.Ct. at 1774.

contract he received when the college notified him that he had been denied tenure. *See Green*, 136 S.Ct. at 1780 (citing *Ricks*, 449 U.S. at 258). In this case, Plaintiff received notice on December 27, 2012 that her employment with the USPS was being terminated and that it would end no sooner than January 26, 2013, 30 days from the date on which she received the NOR (Dkt. No. 16-1 at 1). Plaintiff has not disputed that, under the collective bargaining agreement that covered her position, she remained in pay status for thirty days after her receipt of the NOR, and that her employment terminated after expiration of that 30-day period (Dkt. No. 16-3 at 1-2, ¶ 3). Applying *Ricks*, it would seem that Plaintiff's claim accrued, and the limitation period began running, on December 27, 2012, the day she received the NOR. "That final [thirty days of pay] was merely an inevitable consequence of the [NOR] the plaintiff claimed was discriminatory." *Green*, 136 S.Ct. at 1780 (citing *Ricks*, 499 U.S. at 258). Because Plaintiff failed to initiate contact with an EEO counselor by February 10, 2013 (45 days after December 27, 2012) her claim for wrongful termination is barred for failure to exhaust administrative remedies. *See generally Cano*, 755 F.2d at 221; *Pell v. Potter*, 2011 WL 808829; *Hardy v. Potter*, No. CV408-223, 2010 WL 3153974, at *2 (S.D. Ga. July 15, 2010) (plaintiff failed to exhaust administrative remedies when he failed to consult with EEO counselor within 45 days of receiving notice of removal).

In the alternative, there are cases that have measured the 45-day limitation period from the date on which a notice of removal, or its equivalent, became effective. For example, in *Hamiel v. Donahoe*, Civil Action No. 14-4131, 2015 WL 2255258, at *3-4 (E.D. Pa. May 14, 2015), plaintiff received a notice of removal on August 15, 2012. The plaintiff had the right to initiate a grievance of the notice, and she did so. *See Hamiel*, 2015 WL 2255258, at *3 & n.2. The decision denying the plaintiff's grievance was rendered on December 24, 2012, after which

the plaintiff sought arbitration. *See id.*, at *3. The court held that the plaintiff's claim for wrongful termination accrued on December 24, 2012, when her grievance was denied and the notice of termination became effective. *See id.* In *Brocato v. U.S. Postal Serv.*, Civil Action No. 12-1402, 2014 WL 2120081 (E.D. La. May 21, 2014), the USPS sent the plaintiff a Notice of Proposed Removal ("NPR") on October 26, notifying him that the USPS proposed to remove him no sooner than thirty (30) days from his receipt of the NPR. *Id.*, at *1. On November 26, 2010, the USPS sent the plaintiff a Letter of Decision notifying him that he would be removed from his position effective at the close of business on November 26, 2010. The court held that the plaintiff "was removed from his position as a letter carrier on November 26, 2010[,]" and "then had 45 days to contact an EEO counselor." *Id.*, at *5. Because the plaintiff did not initiate contact with an EEO counselor until June 17, 2011, some seven months after his removal, he failed to exhaust his administrative remedies. *See id.* The approach taken in *Hamiel* and *Brocato* appears consistent with the language of 29 C.F.R. § 1614.105(a)(1), which provides that, in the case of a personnel action, an employee must initiate contact with an EEO counselor "within 45 days of the effective date of the action." According to USPS documentation submitted by Plaintiff, her last day in pay status – the date on which the NOR was effective – was January 24, 2013 (Dkt No. 25-1 at 47).[5] Plaintiff did not initiate contact with an EEO counselor until June 7, 2013, some four and a half months later and well beyond the 45-day limit in 29 C.F.R. § 1614.105(a)(1). Accordingly, under this analysis as well, Plaintiff's claim for

---

[5] There appears to be a discrepancy between the date on which Plaintiff's NOR became effective, which, according to its terms, should have been January 25, 2013 (30 days after her receipt of the NOR), and the date on which the USPS removed her from pay status, which was apparently January 24, 2013 (Dkt No. 25-1 at 47). This minor discrepancy has no effect on the analysis of Defendant's contention that Plaintiff failed timely to exhaust her administrative remedies.

wrongful termination is barred because she did not timely exhaust her administrative remedies. *See Hamiel*, 2015 WL 2255258, at *3; *Brocato*, 2014 WL 2120081, at *5.

Plaintiff, however, contends that her USPS employment did not end, and, therefore, her claim for wrongful termination did not accrue, until sometime after April 15, 2013, the date on which the arbitration decision affirming her removal as a USPS employee was issued (Dkt. No. 44 at 1-2). Courts have consistently rejected the claim that invoking the right to arbitration extends the administrative deadline for initiating contact with an EEO counselor. *See Hamiel*, 2015 WL 2255258, at *3 (participation in arbitration does not toll the § 1614.105(a)(1) limitation period; citing *Word v. Potter*, 149 F. App'x 97, 100 n.4 (3d Cir. 2005)); *Brocato*, 2014 WL 2120081, at *5 (EEO actions are not deferred while a plaintiff pursues arbitration remedies under collective bargaining agreement; citing *Maddox v. Runyon*, 139 F.3d 1017, 1021 (5th Cir. 1998)). Even if this contention were correct, however, which it is not, Plaintiff still did not timely exhaust her administrative remedies. She would have had to initiate contact with an EEO counselor by no later than May 30, 2013 (45 days after the April 15, 2013 arbitration decision was issued), but she did not do so until June 7, 2013 (Dkt. No. 16-4; Dkt. No. 36-2 at 1, ¶ 4). That this is a matter of mere days makes no difference. In *Vazquez-Rivera*, the First Circuit affirmed dismissal for failure to exhaust administrative remedies when the plaintiff missed the filing deadline by one day. *See Vazquez-Rivera*, 759 F.3d at 45, 48-49.[6]

---

[6] To the extent Plaintiff claims that the 45 days should run from April 25, 2013, the date on which she claims she received notification of the adverse outcome of her arbitration proceeding (Dkt. No. 52 at 8), that claim is inconsistent with the text of 29 C.F.R. § 1614.105(a)(1), which provides that an aggrieved person must initiate contact with an EEO counselor within 45 days of the "effective date" of the allegedly discriminatory personnel action, not the date on which on aggrieved person received notice of the adverse personnel action. Plaintiff has submitted numerous documents to this court that establish that her removal as an employee of the USPS had an effective date of April 15, 2013 (Dkt. No. 25-1 at 45-46, 48, 51-53).

While difficult to tease out of Plaintiff's submissions, and not addressed by Defendant, it appears that Plaintiff may be claiming that the USPS was not entitled to issue her a NOR and terminate her employment while she was out of work because of an on-the-job injury for which she had requested continuation of pay ("COP") (Dkt. No. 44 at 4).  Regulations promulgated by the Department of Labor's Office of Workers' Compensation Programs ("OWCP") provide that "[a]n employer may not interrupt or stop COP to which the employee is otherwise entitled because of a disciplinary action, unless a preliminary notice was issued to the employee before the date of injury and the action becomes final or otherwise takes effect during the COP period." 20 C.F.R. § 10.222 (2015).  Plaintiff was injured on the job on December 12, 2012 (Dkt. No. 25-1 at 20-21).  She received the NOR on December 27, 2012, and its effective date was on or around January 24, 2013 (*id*. at 47).  The relevant regulation does not provide that a disciplinary action cannot be initiated during the period of time that an employee is entitled to COP for an on-the-job injury.  Rather, it protects the employee's right to receive COP for as long as the employee is entitled to COP without regard to the outcome of disciplinary action initiated while an employee is receiving COP.  To the extent Plaintiff's complaint asserts direct claims for COP, this court lacks jurisdiction to adjudicate Plaintiff's entitlement to COP or other workers' compensation benefits under the Federal Employees' Compensation Act.  *See generally Stone v. Chao*, 284 F. Supp. 2d 214, 241 (D. Mass. 2003) (citing 5 U.S.C. § 8128(b)).

3.  Continuing violation

Plaintiff appears to argue that, at least as to her allegedly wrongful discharge, her complaint is not barred because she is complaining about ongoing discrimination, such as a request that she re-pay money for health premiums and an on-going dispute about her entitlement

to COP for a December 12, 2012 on-the-job injury and a related allegation that her supervisor falsified a form. These contentions are unavailing.

First, the First Circuit has ruled that the continuing violation doctrine "relates to statutes of limitations and has no bearing on relief from Title VII's exhaustion requirements." *Jorge*, 404 F.3d at 565 n.7. *See also Vazquez-Rivera*, 759 F.3d at 51 n.5 (same).

Second, Plaintiff's continuing violation contention is very similar to the contention that was rejected in the *Pell* case, where the plaintiff asserted that his claim accrued on, and the limitation period for initiating contact with an EEO counselor should be measured from, the date on which he learned that the USPS would not further investigate his claim that a prior incident was discriminatory. The court in *Pell* rejected this contention, reasoning that "'[a] new violation does not occur, and a charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from past discrimination.'" *Pell*, 2011 WL 808829, at *4 (quoting *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628 (2007) (superseded on other grounds by Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111-2, 123 Stat 5)); *see also Jensen*, 912 F.2d at 523 (limitation period is measured from occurrence of triggering event; lingering sequelae do not extend limitation period).

Reading the record here in the light most favorable to Plaintiff, her obligation to reimburse the USPS for premiums for health insurance cannot be seen as anything other than an adverse effect that resulted from her allegedly discriminatory discharge and the consequent loss of her entitlement to any health care coverage to which she was entitled as an active USPS employee. *See Green*, 136 S.Ct. at 1781 (plaintiff could not use date of expiration of his health insurance, which was based on the termination of his employment, to extend the limitations period). As to Plaintiff's claim of a falsified form submitted by her supervisor, documents she

has submitted demonstrate that she was aware of an alleged falsification and the denial of COP

by no later than March 12, 2013 when she made the accusation in writing (Dkt No. 25-1 at 30).

To the extent this alleged falsification can be viewed as an independent discriminatory act (rather

than part of a dispute related to Plaintiff's entitlement to benefits under FECA, which would

have to be resolved by the OWCP), Plaintiff had an obligation to initiate contact with an EEO

counselor about this act by no later than April 26, 2013 (45 days from March 12, 2013).  She did

not initiate contact with an EEO counselor until June 7, 2013.

    C.  Equitable tolling

    The 45-day deadline for initiating contact with an EEO counselor can be extended based

on equitable tolling only when "'the individual shows that he or she was not notified of the time

limits and was not otherwise aware of them.'"  *Gonzalez-Bermudez v. Potter*, 675 F. Supp. 2d

251, 255 (D.P.R. 2009) (quoting 29 C.F.R. § 1614.105(a)(2)).  "It is '[o]nly in exceptional

circumstances' that equitable tolling will extend a filing deadline. . . .  To this end, 'the heavy

burden' of 'prov[ing] entitlement to equitable relief *lies with the complainant*.'"  *Bartlett*, 749

F.3d at 10 (quoting *Farris*, 660 F.3d at 563) (emphasis supplied).  When, as here, a plaintiff

seeks to invoke the equitable tolling doctrine to extend an administrative filing deadline,

> a court should initially determine whether the plaintiff had actual or constructive
> knowledge of h[er] rights under the [applicable anti-discrimination statutes].
> Actual knowledge occurs where an employee either learns or is told of h[er]
> ADEA [or Rehabilitation Act] rights, even if [s]he becomes only generally aware
> of the fact that there is a statute outlawing age [and disability] discrimination and
> providing relief therefor . . . .  Constructive knowledge, on the other hand, is
> attributed to an employee in situations where [s]he has retained an attorney, or
> where an employer has fulfilled [its] statutory duty by conspicuously posting the
> official EEOC notices that are designed to inform employees of their ADEA [and
> Rehabilitation Act] rights . . . .

*Id.* (quoting *Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 753 (1st Cir. 1988)) (citations

omitted in original) (internal quotation marks removed).  Here, for at least two reasons, Plaintiff

has not met the heavy burden of proving that she is entitled to equitable tolling of the 45-day

deadline for initiating contact with an EEO counselor.

First, the record before the court establishes that Plaintiff *actually knew* that she had an

obligation to begin the process of invoking her statutory rights against discrimination by

initiating contact with an EEO counselor.  Her knowledge of the requirement is evidenced by the

fact that she submitted an EEO pre-complaint counseling request dated June 7, 2013, some 52

days after the unfavorable outcome of her arbitration proceeding, and some 43 days after the date

on which she claims she received notice of the unfavorable outcome of her arbitration grievance

(Dkt. No. 16-4; Dkt. No. 25 at 8).  This fact alone is sufficient to defeat any claim that the time

for Plaintiff to initiate EEO contact should be equitably extended.  In any event, for actual

knowledge, all that is required is that an aggrieved person in Plaintiff's situation have general

knowledge of that fact that there are statutes outlawing discrimination.  *See Bartlett*, 749 F.3d at

10.  Documents submitted by Plaintiff show that she raised claims of discrimination, including

requests for reasonable accommodation, during her USPS employment, thereby demonstrating

the requisite actual knowledge (Dkt. No. 25 at 2-3).  *Cf. Wyse v. Summers*, 100 F. Supp. 2d 69,

75-76 (D. Mass. 2000) (a critical fact in evaluating whether an employee timely exhausted

administrative remedies is when the employee knew or should have known she was being

discriminated against).

Second, the USPS has attested that copies of EEO Poster No. 72, which advises

employees of the 45-day time limit to initiate contact with an EEO counselor, were displayed at

the two USPS locations where Plaintiff was assigned to work while she was a USPS employee

(Dkt. No. 36-1 at 1-2, ¶¶ 3-7), and that, among other things, Plaintiff received EEO training in

2006 that would have included information about the 45-day time limit for initiating EEO

contact (*id.* at 3, ¶ 9).  Plaintiff's sister, who submitted a supporting affidavit, has not disputed

that the USPS posted the requisite EEO notice, although she apparently quibbles with the USPS

description of the second of the USPS facilities in which her sister worked between 2007 and

2012 (Dkt. No. 44-1 at 8, ¶ 8).  Plaintiff has not disputed that EEO Poster No. 72 was displayed

in her workplace, nor does she squarely deny that she attended training in 2006, or that the

requirements for pursuing an EEO claim were addressed at that time (Dkt. No. 44, at 5-6).

Rather, she suggests that the USPS was required to do more to ensure that she was on notice of

the 45-day requirement, or more to prove that she had received such notice.  "[T]here is no

genuine or material factual dispute that, at [the relevant] time, [Plaintiff] had access to the area

[where EEO Poster No. 72 was] posted."  *Kwatowski v. Runyon*, 917 F. Supp. 877, 884 (D.

Mass. 1996).  Moreover, the government is not "required to give . . . plaintiff personal notice of

the applicable time limits."  *Id.* at 883.  Thus, "constructive, if not actual knowledge, of the

applicable EEO deadlines can be attributed to Plaintiff [at the relevant time]."  *Id.*

      For the foregoing reasons, the court concludes that Plaintiff has failed to satisfy her heavy

burden of showing that the 45-day limitation period for initiating contact with an EEO counselor

should be extended.  *See id.* at 883-85, 886; *contrast Gonzalez-Bermudez v. Potter*, 675 F. Supp.

2d 251, 255-56 (D.P.R. 2009) (plaintiff provided uncontroverted evidence that he did not have

actual or constructive knowledge of 45-day initiation of contact requirement).

    IV.   CONCLUSION

      For the foregoing reasons, the undersigned recommends that Defendant's Motion to

Dismiss or for Summary Judgment be granted and that the case be closed.[7]

---

[7] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b),
any party who objects to these findings and recommendations must file a written objection with the
Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and

Dated: August 3, 2016                    /s/ Katherine A. Robertson
                                         KATHERINE A. ROBERTSON
                                         UNITED STATES MAGISTRATE JUDGE

---

Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.